Honors, I'm Ward Shanahan from Helena, Montana. I represent a consolidated appeal here for Henry Skranak and his sons, and for Charles Harpole. They've been joined here on this issue. Are the issues between those two appellants identical? We don't have to separate out any separate cases? They're essentially the same as far as the law is concerned, yes. All right. Okay. And I want to get right to the point. I have two problems here that have been raised by the government. The one is the question of preemption that the government has relied on the Adams case as decided by the Ninth Circuit. And the second one has to do with the statute of limitations. The preemption issue for me is dependent upon the answer to this question, and that is preemption of what? The district court, and this is the problem I have with Judge Malloy's decision. In all of the patents that are shown in the record, there are habendum clauses which deal with a general statement about it includes all appurtenances, but then there are special conditions. In some places, they're referred to as the second special condition. Other patents have a third special condition. But those two special conditions deal with in the absence of necessary legislation by the Congress, the legislature of the state of Montana may enact protection and provide easements and anything else to allow the reasonable development of these claims. Now, that's an express statement in the patents. Counsel, before we get to that, don't we have a threshold question as to jurisdiction? In other words, has the statute of limitations run on a quiet title? The statute of limitations first. I don't think so. And my response to the statute of limitations question is based on two pieces of evidence. The first is a letter from the foreman. My question is, to what extent was this issue determined by Judge Malloy? It was not. It was first raised here on the case. That's my concern. Don't we have to first decide whether we have jurisdiction even to hear the case? And if the statute has run, we don't. If it has not run, we do. But don't we need to have that determined at some point? And I'll address that. The question of the statute of limitations is, I think, disposed of. First of all, the decision of this case, and I believe it's the Michael case or Michelle case, which we cited in our reply brief, I think deals directly with the difference between the statute of limitations in dealing with these property boundary cases and the statute of limitations when you're dealing with these easement cases. And I think the easement cases, as far as this case is concerned, our facts are protected by what we call our undisputed fact number eight, which is in the record. And it's a letter to Senator Conrad Burns from the district ranger at Libby, which predated the filing of this application for special use permit. And it relates to history in the case of Mr. Skranek's property of the fact that when the Wilderness Act was passed in 1964, the motorized access was cut off on Mr. Skranek's route. And both of these people have only one route into their property. And that was to protect the wilderness boundary because Mr. Skranek's property is the wilderness boundary. And they state in this letter that his property would have been included in the wilderness but for the fact that it was private property. It's right above Geiger Lake, which is inside the boundary. But the letter goes on to state, I think, quite clearly that there was really no restriction on access prior to that time to motorized access. But once the Wilderness Act was passed and the wilderness was created, and I think there's a special act for the Cabinet of Wilderness. It isn't the General Wilderness Act. It's a special act that created the Cabinet of Wilderness. That the Forest Service recognized the fact that he had a right to get in there. In fact, he was quite upset about blocking of the access. But he went to them and talked to them about getting access. And they actually finally gave him motorized access under special conditions, with a lot of special conditions, which he objected to. And so he didn't use that permit. But they indicate by granting him that, that they were not trying to keep him out of there. They were trying to keep the general public off that road. And because it was the only access in there. But after, there was a huge fire in there around World War I and wiped out a couple of towns and pretty well wiped out the mining industry in that area. And so it wasn't used. The road was in disrepair and hadn't been used for that time. The same is the case in Mr. Harpole's situation. The record shows that the ranger told him, we recognize you have a right, but you have to get a special use permit. And one of the things I'd like to make clear to the court is that we never in this case from the beginning took the position that the Forest Service didn't have the right to reasonably regulate these routes. That is in the case, but when we started this application process, we never took the But the, and the Forest Service at the time reciprocated and said, you know, we recognize you have a right, but we have to get these details ironed out. So we went into this process finally filing the applications. We had a five-year EIS process, undoubtedly because of the grizzly bear problem and the wilderness boundary. And it was not until we got the January 2001 that we knew that we had a set of conditions that we couldn't live with. And we aren't dealing with those in this case. We stated to the district court that we thought the taking issue was something that had to be dealt with by the court of claims. And so we didn't raise it here. But we thought the conditions were too onerous. We can't get in there for a month and a half in the spring. We can only get in there two times a week, all during the summer and fall. And so the property is really not usable for much. But that's a question that's beside the point here. What seems clear from these two pieces of evidence is that the Forest Service was not denying absolutely access. They were just saying you have to have you have to file this application and you have to get a Can I take you back for just a second to a question that Judge O'Scanlan asked you regarding statute of limitations and jurisdiction. I'll speak up. Yes. If we read Adams to say that under ANILCA, the Alaska Act, it has preempted all common law easements over Forest Service land, then why should we worry about whether Judge Malloy considered statute of limitations issues as to the existence of easements? They don't exist. Because that goes that is much more restrictive than the actual fact support. The language and the patents deal with the codification under Montana law of the easement by necessity. But if we read the Adams case as saying ANILCA extinguished all common law patents of any kind. That's the proposition I want to put to this court is we have a road. You may have a claim in the court of claims, but aren't we bound? Isn't this panel bound by Adams to hold that there are no such things after ANILCA as common law easements? And therefore, the issue of whether the statute of limitations had run or not on a common law easement is a perhaps academic point, but moot. No, because we have the we have the language of the patents, which provides that the state of Montana can enact rules for the that cover easements. But those patents precede ANILCA and the Ninth Circuit interpretation. And I think they were I think they were vested rights in 1990. They may have been vested rights, but doesn't ANILCA eliminate them? And therefore, you may have a takings claim, but that's all. I guess your understanding of what a common law right is and mine are different, Your Honor. The mine mine is that you're talking about an express easement. Is that what you're relying on? I'm saying that opposed to an implied common law right of access, there's an implied easement in the in the patent, each one of that says, in other words, as I understand the attorney general's opinion, which I assume you've read because it's in the in the record in this case, Benjamin Civiletti was dealing with that in the Montana Wilderness case. He's saying that the the easement can be implied from the language of the grant or the circumstances surrounding its issuance. And I think that language which Judge Malloy omitted dealing with is the language that that from which that easement can be implied or the actual enactments of the Montana legislature in effect at the time that this these patents were granted. And that's the code of 1895 in Montana, which essentially codified the right of way of necessity and and protected this, which I think the language of the grant gives to the state of Montana in the absence of any any congressional enactment. And 100 years later, this court decides that the Alaska National Interest Land Conservation Act obliterates all that. How can we obliterate a right which is protected by the Constitution? Is it? Do you concede that the nature of the right of access is an easement of some kind? Yes. And the Forest Service is referred to as easement. Yes. All right.  It's an easement. Yes, it's in readings and reading that this court's previous decision, isn't it that sweeping? It doesn't distinguish between easements granted at the time of patent from easements granted later on in saying they are preempted by the Alaska Wilderness Act. No, this is something that's in addition to an ILCA, I think, and the and the and my problem with the district court's ruling is that it left out the special conditions which create that in those patents and and just concluded that the word of pertinences therein to belonging was the was too broad and didn't specify. I think if you read on in the patent, they specified that the legislature of Montana can provide rules. If you don't have an easement, you still have a right under the APA to a reasonable special permit. Yes. And what your position is, is that the conditions put on the special permits given to your clients are arbitrary and capricious. Yes, that's right, Your Honor. And the reason is that they put a 10-year limit on there and they feel that they have an obligation to do that for some reason. And we went through a five-year period of an environmental impact statement where we couldn't get into these properties. And now we've got to go through that whole thing again. And if we have an easement right based upon the language of our patents around Montana statutory law, I don't think the Forest Service has the right to limit that to a term of years. The permit has a 10-year life, but hasn't the agency indicated it will be renewed? Yes, but what that subjects us to is another series of lawsuits by environmental organizations that want to keep us out of that area next to that wilderness. And so we have to go back through that whole delay. These men haven't been able to get into their properties now for a number of years. It's 10 years since we filed these applications. And by the Forest Service limiting this to 10 years, we're just in a situation where we risk. I haven't seen a federal agency yet in my 30 years or so of experience with this kind of lawsuit that will not knuckle under to an environmental group raising a political question and requiring us to go back through another EIS. I wonder if there is a ripeness issue with respect to that. If the course of dealing is these permits are renewed automatically every 10 years, shouldn't we wait until the renewal is denied? Our problem is, Judge, if you look in the record, the estimates of the cost of these road changes, particularly in Mr. Skranick's case, is somewhere between $50,000 and $75,000, which they have to spend. And then the 10 years end and we're back to the races again. And those are the problems of whether these people will ever get a chance to use their property. I think that's it. You may reserve the rest of your time if you wish. Pardon me? You may reserve the rest of your time if you wish. I'll just hang on to that. All right. Thank you. We'll hear from the government. Ms. Hazard? Good morning, Your Honors. I'd like to address first some of the facts relating to the case. Could you introduce yourself for the record, please? Oh, I'm sorry. I'm Katherine Hazard here on behalf of the Forest Service and with the Justice Department. I'd like to lead off with a discussion of some of the record documentation on the statute of limitations issues. Now, as I understand it, Judge Malloy did not reach the question of statute of limitations. Is that correct? That's right. He did not. He reached the merits, but the statute of limitations was not addressed in his decision. And what's the government's position? Should we remand so that we can deal with that to determine whether or not we have jurisdiction or not?  Well, I don't have the facts, but we believe that the facts here are sufficient for this Court to resolve it if, however, this Court concludes that the facts are not adequate for it to make its determination, then it could remand or do a limited remand for the district court to address that issue. And I just want to point out that the facts could only be sufficient for us if they were undisputed. The facts are undisputed, yes. The facts are undisputed. Whether they established whether a property owner should have known, based on those facts, that there were adverse claims to a property interest is an issue of law, which this Court can resolve de novo. I'll address first Skranik's circumstances. The road there has been closed at least since the 1930s. Skranik's administrative appeal at SCR, I'll refer to it, which is our supplemental excerpt of record at 12, number 8. In Skranik's administrative appeal document to the Forest Service, he recognizes that the road was closed at least since the 1930s. He also states that he was arrested and fined for attempting to gain access in 1970 on complaint by the Forest Service. That's also at SCR 12. Thank you. You may continue. In Skranik's administrative appeal, he also says that the government took his property in the 1930s in a supplemental excerpt of record at 17, number 3. Skranik's letter says he has been barred by ditches, berms, arrests, and fines. That's a supplemental excerpt of record at 17. And this is all relevant to what? This is all relevant as to whether the government made its adverse interest in the property, which is adverse to his claim to an easement, prior to 1988. In Skranik's comments on the draft environmental impact statement, which is the excerpt of record at tab 13, it states that the Forest Service closed the road unilaterally without consent of the owner. When was that? When was the draft? When did it close it? Yes. In the 1930s. This is the road. The road to Skranik's property has been accessible by horse, and it's been a hiking trail and horse trail since the 1920s by his own admissions, which I've just indicated. Similarly, in his complaint, supplemental excerpt of record at 38, he recognizes that the road has been closed since the 1930s. We believe that that evidence makes it clear that he or his predecessors in interest should have known of the government's claim exclusive right to deny their historic access, which is the standard described in Michael or Mitchell, however that case is pronounced. Similarly, with regard to Harpel's Quiet Title Act claim, the record has a letter from Harpel dated March 1986, which is in the supplemental excerpt of the record at 131, in which he states that the earthen barriers, which replaced a temporary gate, that both those actions were done without his consent, and he is disputing the Forest Service's right to have constructed those barriers, and that was in 1986. So we believe that this evidence is sufficient to demonstrate that. In other words, that we could take that into account at this level. We would not have to remand for findings of fact. That's the government's position. That's right, because these are states. Fundamentally, that there are no disputed questions of fact is your position. There are disputed questions of fact that relate to when the road was built. In 1939, we believe, and Harpel alternatively claims that it was in 1939 and earlier, but as to these particular facts, that we constructed a barrier, that we barred access, as to Harpel and as to Skranek, that it's been a trail, a hiking trail, since the 1930s, and that we asked that he be arrested and fined for trespassing in 1970. Those are undisputed. In fact, they are stated in declarations by the inholders. Is there any evidence by Harpel that he used the road after March of 1986? You put temporary gates there, but, you know, we just had the case before you where a temporary gate had a wire and a lock, but they gave a key to the inholder. Right. Is there any evidence that Harpel used this road after March 1986? I actually don't know of any. I can't really answer that. Is there anything in the record that shows that he used the road after March 1986? I don't know. I could check that, Your Honor, and have something supplemental. I don't believe so. But even if there were, it would have been pursuant to a special use permit. And our position is that when the Forest Service erected the barrier and issued a whole series of letters in 1984, 85, and 86, indicating to Harpel that he needed to apply for a special use permit if he wanted access, and then Harpel said, and we also indicated that he would need to pay, that he would need to pay 5 percent of the right-of-way value. It was that letter from the Forest Service that prompted his response in March 1986, saying, no, I don't consent to these barriers. I want access any time. At that point, that triggered the statute of limitations, if nothing prior to it. Counsel, I wonder if we can get to the ANILCA issue. There is a regulation, which I understand is relevant here, in which the Forest Service is to determine whether there are any bases for access, such as an easement, as part of the entertainment of the special use permit application. Right. We agree with that. We agree with what? We agree that the Forest Service needs to make a property interest determination. Which it did not do in this case. It did here, and I can point you to the record. At the excerpt of record, tab 4, at 2 for Harpel and at 4 for Skranek, that's both within excerpt of record, tab 4, pages 2 and 4, the Forest Service states, the Forest Service is determined that the proponents do not have valid rights under RS-2477 or other preexisting rights. And at that point, their claims were under RS-2477. They then later abandoned those claims. But if you look also at the documents that are referenced there, the Forest Service was making its determination as to whether they had a property interest in the road. Counsel, you'll have plenty of time on your rebuttal to make any comments you wish. You may continue, Ms. Hazard. Okay. So in our brief, I think we were misunderstanding maybe that this, the plaintiff's argument. We wanted to make clear that that regulation can't circumvent the Quiet Title Act statute of limitations. But I understand that there is an additional point, which really goes to their APA claim, which is whether the agency did what it was required to do in considering their special use permit. And I would like to represent that they did. That's the government's position. That's our position. Yeah. I also want to say, with regard to the question of the scope of Adams and Anilka, I think those issues aren't presented here because they go to the merits of the Quiet Title Act claim. But our position is that Adams addressed only a easement by necessity, not all other common law easements. And, therefore, and that what Anilka preempts is an easement by necessity. And whether one analyzes it as preempting the easement by necessity or providing another, guaranteeing another access which exterminates an easement by necessity because they are exterminated when there's another right of access. My understanding of Anilka generally, and this is a very, very broad brush treatment, is that it does give the land agencies the opportunity to redesign access, but it nevertheless must guarantee access. Is that greatly correct? Yes. It must guarantee access that the Secretary deems reasonable, which we view as meaning that it can be reviewed as whether it was arbitrary and capricious. But taking into account the property to which access is to be given. Both issues. The property to which access is requested and the surrounding properties, which the agency has duties to manage. Well, if there's a home, a year-round home. Right. For example, the Secretary would have to take into account that usage, and it's assuming it's permitted usage. Exactly. Yes. So that whatever access is given, it would have to be given on a year-round basis. Yes. All right. Let me ask you a question which we haven't discussed before, but going to the APA claim and the special use permits, which were extended to both of these landholders, is there a claim on appeal properly preserved that the conditions placed on those permits are arbitrary and capricious? Well, the only issue I noted in their opening brief was whether the agency acted arbitrary and capriciously in failing to determine their property interest. That's what I thought. Right. I didn't see any other issues raised concerning the 10-year term or the 10-year term or whether it can be reviewed or whether there's certain trips that can't be made at certain times, the amount of traffic, all that. It doesn't appear to be before us. I believe it is not, Your Honor. Thank you. It's not here because the trial court didn't reach it. No, the trial court did reach it. It's not here because it was not raised in their opening brief. The trial court did address and resolve all of those issues which were raised in the district court. Anything further, counsel? I think we understand the government's position. Okay. I'd just like to note a minor error in my brief, but one that might be significant to this Court, which is that Lombard is a First Circuit case, not a Ninth Circuit case. All right. That's fine. We'll catch that. Thank you, Your Honor. All right. Thank you. Mr. Shanahan, you have a few minutes reserved. Well, just briefly, Your Honor, if you look at page 11 of my opening brief, I'm referring you to a statement by the reviewing officer for the Kootenai National Forest who states that the Forest Service, in consultation with the OGC, that's our counsel's office in Region 1 in Missoula, has determined that it's not necessary to address whether there may have been some common law right of access to the private property. So contrary to what counsel says, I don't think there was a determination. Now, these two letters that I pointed out to the Court definitely say that the government isn't trying to deny access. They're just want to make sure that the ---- Maybe I didn't make myself clear, but I thought I made myself clear to Mr. Hazard. One thing is whether you have preserved the issue whether the Forest Service has properly considered the existence or nonexistence of an easement. That you have properly preserved in your opening brief. Yes. That's correct. My question is a different one. Did you properly preserve the issue whether the conditions that the Forest Service applied to the special use permits as to both of your clients were arbitrary and capricious in view of their property, the use of the Forest Service and all the other circumstances which should be taken into consideration, and why they weren't reasonable? Well, we raised that question in the court below, but we didn't bring it up here because we thought that our principal issue was to determine the extent of our property right first. All right. So you agree with counsel that the particular conditions placed on the special use permit are not before us as to whether they were arbitrary and capricious. I think that's correct, Your Honor. And I just assumed that was an issue for the court of claims that we got there. Thank you very much. Thank you, counsel. The case just argued will be submitted for decision, and the Court will take a short recess before hearing the last case. Thank you.
judges: McKay , O'scannlain, Bea